UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— x

GLEN COHEN, Individually and on Behalf of :    Civil Action No.
All Others Similarly Situated,                :
                                     :    <u>CLASS ACTION</u>
                      Plaintiff,    :
                                       :    COMPLAINT FOR VIOLATIONS OF THE
      vs.                             :    FEDERAL SECURITIES LAWS
                                       :
MARKEL CORPORATION, ALAN I.       :    <u>DEMAND FOR JURY TRIAL</u>
KIRSHNER, THOMAS S. GAYNER,        :
RICHARD R. WHITT III, ANNE G.        :
WALESKI and JEREMY A. NOBLE,      :
                                       :
                    Defendants.    :
                                       :

———————————————————— x

Plaintiff, Glen Cohen, individually and on behalf of all others similarly situated, by plaintiff's undersigned attorneys, for plaintiff's complaint against defendants, alleges the following based upon personal knowledge as to plaintiff and plaintiff's own acts and upon information and belief as to all other matters based on the investigation conducted by and through plaintiff's attorneys, which included, among other things, a review of U.S. Securities and Exchange Commission ("SEC") filings by Markel Corporation ("Markel" or the "Company"), Company press releases and media reports about the Company.  Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a securities fraud class action on behalf of all purchasers of Markel securities between July 26, 2017 and December 6, 2018, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 ("1934 Act").  These claims are asserted against Markel and certain of its officers who made materially false and misleading statements during the Class Period in press releases and filings with the SEC.

2.      Markel, a financial holding company, markets and underwrites specialty insurance products in the United States, the United Kingdom, Canada, and internationally.

3.      Markel CATCo Investment Management Ltd. ("MCIM"), the Company's wholly-owned subsidiary, is an insurance-linked securities investment fund manager and reinsurance manager that manages diversified, collateralized retrocession and reinsurance portfolios covering global property catastrophe risks.  The Company is the sole investor in one of the funds managed by MCIM, the Markel Diversified Fund, and consolidates that fund as its primary beneficiary.  MCIM also manages CATCo Reinsurance Opportunities Fund Ltd. ("CROF"), a closed-end fund in which the Company holds an investment.

4.    Throughout the Class Period, defendants disseminated materially false and misleading statements to the investing public and failed to disclose adverse facts pertaining to the Company's business, operations and financial results.  Specifically, the Company concealed material information and/or failed to disclose that:

(a)    Markel lacked effective reporting controls and was not reporting its financial results in compliance with Generally Accepted Accounting Principles ("GAAP");

(b)    MCIM was not appropriately recording loss reserves;

(c)    as a result, MCIM's loss reserves would need to be adjusted and/or restated;

(d)    these accounting practices would lead to regulatory scrutiny and financial loss to investors; and

(e)    as a result of the foregoing, defendants' positive statements during the Class Period were materially false and misleading and/or lacked a reasonable basis.

5.    On December 6, 2018, Markel announced that it had been contacted by the U.S. and Bermuda authorities on November 30, 2018 regarding "loss reserves recorded in late 2017 and early 2018 at Markel CATCo Investment Management Ltd and its subsidiaries."

6.    In response to this news, the price of Markel common stock price declined $99.70 per share to close at $1,048.23 per share on December 7, 2018, a decline of more than 8%, erasing more than $1.38 billion in market capitalization.

7.    Thereafter, on January 18, 2019, Markel announced that it had terminated the employment of its two top executives at Markel CATCo, and on February 5, 2019, it announced that the Company was writing off 100% of – and taking an impairment charge on the entire $179 million being carried on its books – for the "goodwill and intangible assets of the Markel CATCo reporting unit," reducing their carrying value to "zero."  The Company stated that the impairment charge had

been necessitated "[i]n light of governmental inquiries into loss reserves recorded in late 2017 and early 2018 at an entity managed by Markel CATCo, and taking into consideration the departure of two senior executives and certain redemption rights that are now being offered to investors in ILS Funds managed by Markel CATCo," stating that "Markel CATCo's ability to maintain or raise capital ha[d] been adversely impacted."

8.    As a result of defendants' wrongful acts and omissions as alleged herein, plaintiff and the Class (as defined below) purchased Markel securities at artificially inflated prices, suffered significant losses and were damaged thereby.

## JURISDICTION AND VENUE

9.    The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the 1934 Act, 15 U.S.C. §§78j(b) and 78t(a), and Rule 10b-5, 17 C.F.R. §240.10b-5, promulgated thereunder by the SEC.

10.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and §27 of the 1934 Act.

11.    Venue is proper in this District pursuant to §27 of the 1934 Act and 28 U.S.C. §1391(b).  Many of the acts charged herein, including the preparation and dissemination of materially false and misleading information, occurred in substantial part in this District.  Markel common stock is listed and trades on the New York Stock Exchange ("NYSE").  The Company also has a large presence in New York and so highlights on its website, as follows:

**New York**

New York is the marketplace for insurance in the US.  Home to the world's largest stock exchanges, NASDAQ and the NYSE, and anchored by Wall Street, New York has made its mark in the global financial services sector.

And many of the largest insurance brokers, agencies, and carriers have a major presence in the city, making it efficient for underwriters and brokers to meet in person to discuss client risks and needs.  Markel's presence in the city and

surrounding area continues to grow, with offices in Manhattan; Summit, New Jersey; and Red Bank, New Jersey.

12.     In connection with the acts alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the NYSE here in this District.

## PARTIES

13.     Plaintiff Glen Cohen, as set forth in the accompanying certification which is incorporated herein by reference, purchased Markel securities during the Class Period and was damaged thereby.

14.     Defendant Markel's New York corporate offices are located at 1185 Avenue of the Americas, 16th Floor, New York, NY.  Markel common stock trades on the NYSE under the ticker symbol "MKL" and as of February 5, 2019, there were almost 14 million shares issued and outstanding.

15.     Defendant Alan I. Kirshner ("Kirshner") is, and at all relevant times has been, the Executive Chairman of the Markel Board of Directors.

16.     Defendant Thomas S. Gayner ("Gayner") is, and at all relevant times has been, the Co-Chief Executive Officer ("CEO") of Markel.

17.     Defendant Richard R. Whitt, III ("Whitt") is, and at all relevant times has been, the Co-CEO of Markel.

18.     Defendant Anne G. Waleski ("Waleski") was, at relevant times, the Chief Financial Officer ("CFO") of Markel until September 5, 2018.

19.     Defendant Jeremy A. Noble ("Noble") is, and has been since September 5, 2018, the CFO of Markel.

20.     Defendants Gayner, Whitt, Waleski and Noble are sometimes referred to herein as the "Individual Defendants."  The Individual Defendants made, or caused to be made, false statements that artificially inflated the prices of Markel securities during the Class Period.  The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Markel's quarterly reports, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, *i.e.*, the market.  They were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions with the Company and their access to material non-public information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations being made were then materially false and misleading.  The Individual Defendants are liable for the false and misleading statements pleaded herein.

21.     Defendant Markel and the Individual Defendants are sometimes referred to herein collectively as the "Defendants."

22.     Defendants are liable for: (i) making false statements; or (ii) failing to disclose adverse facts known to them about Markel.  Defendants' fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Markel securities was a success, as it: (i) deceived the investing public regarding Markel's prospects and business; (ii) artificially inflated the prices of Markel securities; and (iii) caused plaintiff and other members of the Class to purchase Markel securities at artificially inflated prices.

## SUBSTANTIVE ALLEGATIONS

23.     Defendant Markel provides engineering, procurement, construction, and installation and technology solutions to the energy industry.  Markel designs and builds infrastructure and technology solutions to transport and transform oil and gas into a variety of products.

24.     Markel acquired MCIM in late 2015, through the acquisition of substantially all of the assets of Hamilton, Bermuda-based CATCo Investment Management Ltd.  CATCo Investment Management Ltd. was founded by Tony Belisle in 2010.  At the time the acquisition was announced in September 2015, the two companies said that the current CATCo management team, then led by CEO Tony Belisle, would continue to operate the business from its Hamilton headquarters as its division CEO under Markel's ownership.  Alissa Fredricks joined Markel CATCo in 2016 as its Chief Risk Officer, overseeing its portfolio and underwriting activity.  She was promoted to CEO-Bermuda in December 2017, reporting to Tony Belisle.

25.     MCIM, now the Company's wholly-owned subsidiary, is an insurance-linked securities investment fund manager and reinsurance manager that manages diversified, collateralized retrocession and reinsurance portfolios covering global property catastrophe risks.  The Company is the sole investor in one of the funds managed by MCIM, the Markel Diversified Fund, and consolidates that fund as its primary beneficiary.  MCIM manages CROF, a closed-end fund in which the Company holds an investment.

26.     The Class Period starts on July 26, 2017.  On that day, Markel filed a Form 10-Q for the period ended June 30, 2017, with the SEC which was signed by defendants Kirshner and Waleski.  Regarding MCIM, the Company reported revenue of $93 million.  For the Markel Diversified Fund, Markel reported total assets of $186.0 million and total liabilities of $63.8 million. Concerning the Company's financial reporting, accounting for assets and calculation of impairments, and internal reporting controls, the 10-Q stated, in pertinent part, as follows:

The accompanying consolidated financial statements have been prepared in accordance with U.S. generally accepted accounting principles (U.S. GAAP) and include the accounts of Markel Corporation and its consolidated subsidiaries, as well as any variable interest entities (VIEs) that meet the requirements for consolidation (the Company).

\*      \*      \*

Effective January 1, 2017, the Company early adopted ASU No. 2017-04, Intangibles - Goodwill and Other (Topic 350): Simplifying the Test for Goodwill Impairment.  The ASU eliminates Step 2 of the goodwill impairment test, which is performed by estimating the fair value of individual assets and liabilities of the reporting unit to calculate the implied fair value of goodwill.  Instead, an entity will record a goodwill impairment charge based on the excess of a reporting unit's carrying value over its estimated fair value, not to exceed the carrying amount of goodwill.  The provisions of ASU No. 2017-04 were adopted on a prospective basis and did not have an impact on the Company's financial position, results of operations or cash flows.

\*      \*      \*

[E]ffective Disclosure Controls were in place to ensure that the information required to be disclosed in reports we file or submit under the Securities Exchange Act of 1934 is recorded, processed, summarized and reported within the time periods specified in the Securities and Exchange Commission's rules and forms.

27.     As to the Sarbanes Oxley Act of 2002 certifications, each of the Defendants who certified the 10-Q certified that:

1.     I have reviewed this quarterly report on Form 10-Q of Markel Corporation;

2.     Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3.     Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4.     The registrant's other certifying officer(s) and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

a)      Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

b)      Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

c)      Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

d)      Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5.      The registrant's other certifying officer(s) and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

a)      All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

b)      Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

28.      On October 11, 2017, Markel issued a press release entitled "Markel Estimates Third

Quarter Catastrophe Losses," which stated, in pertinent part, as follows:

Markel Corporation (NYSE: MKL) today announced that it expects to report third quarter pre-tax underwriting losses of $503 million, net of reinstatement premiums, from Hurricanes Harvey, Irma and Maria as well as the Mexico City earthquakes. The Company's estimate for the hurricane and earthquake losses is based on claims received to date and detailed policy level reviews, industry loss estimates, output from both industry and proprietary models as well as a review of in-force contracts.

The Company's estimate is preliminary and dependent on broad assumptions about coverage, liability and reinsurance.  Accordingly, the Company's actual net losses from these events may differ materially from this estimate.

*     *     *

Richard R. Whitt, III, Co-CEO commented: "These significant losses fell within our expectations.  At Markel we are well-positioned with our strong balance sheet to respond to the claims of our insureds.  With both underwriting capacity and risk appetite, we are prepared to further assist our customers and trading partners in meeting their ongoing insurance and reinsurance needs."

29.    On October 25, 2017, Markel filed a Form 10-Q for the period ended September 30, 2017, with the SEC which was signed by defendants Kirshner and Waleski.  The 10-Q contained the accounting representations and Sarbanes Oxley certification detailed above in ¶¶29-30.  Regarding MCIM, the Company reported revenue of $1.2 million.  For the Markel Diversified Fund, Markel reported total assets of $183.3 million and total liabilities of $62.8 million.

30.    On November 26, 2017, Markel announced that Defendant Waleski would cease serving as the Company's CFO and would be replaced by Defendant Noble.

31.    On February 6, 2018, Markel issued a press release announcing its fiscal 2017 financial results for the fiscal year ended December 31, 2017 ("FY17").  Markel reported "book value per common share outstanding of $683.55 at December 31, 2017, up 13% from $606.30 at December 31, 2016," that "[o]ver the five-year period ended December 31, 2017, the compound annual growth in book value per common share outstanding was 11%," that "[c]omprehensive income to shareholders was $1.2 billion for the year ended December 31, 2017 compared to $667.0 million in 2016" and that "[d]iluted net income per share was $25.81 for the year ended December 31, 2017 compared to $31.27 in 2016."  The release also quoted Defendant Kirshner stating in pertinent part that Markel had "finished 2017 with record comprehensive income of more than $1 billion which drove double-digit growth in book value over the past one-year and five-year periods," emphasizing that "[t]his was largely due to outstanding performance in [its] equity

portfolio and reflects the benefit of [its] diversified operations," and that its "revenues also set a record, exceeding $6 billion, and reflect both organic growth and contributions from recent acquisitions."

32.    On February 23, 2018, Markel filed its annual report on Form 10-K for FY17 with the SEC which was signed by Defendants Kirshner, Waleski, Gayner and Whitt.  Regarding MCIM, the Company reported revenue of $28.7 million and total assets under management of $6.2 million.  Total assets of Markel Diversified Fund were $170.3 million and total liabilities were $62.7 million.  Additionally, Markel reported that the fair value of the Company's investment in CROF was $20.5 million.

33.    On April 24, 2018, Markel filed a Form 10-Q for the period ended March 31, 2018, with the SEC which was signed by defendants Kirshner and Waleski and contained the same accounting representations and Sarbanes Oxley certification detailed above in ¶¶29-30.  Regarding MCIM, the Company reported revenue of $17.3 million.  For the Markel Diversified Fund, Markel reported total assets of $125.7 million and total liabilities of $25.4 million.  Additionally, Markel reported that the fair value of the Company's investment in CROF was $14.5 million.

34.    On April 27, 2018, Markel filed a Form 8-K with the SEC announcing that Defendant Kirshner's "principal executive officer" reporting duties had been transitioned to Defendants Gayner and Whitt, the Company's new Co-CEO effective April 24, 2018.

35.    On July 31, 2018, Markel filed a Form 10-Q for the period ended June 30, 2018, with the SEC which was signed by defendants Gayner, Whitt and Waleski and contained the same accounting representations and Sarbanes Oxley certification detailed above in ¶¶29-30.  Regarding MCIM, the Company reported revenue of $17.4 million.  For the Markel Diversified Fund, Markel

reported total assets of $95.2 million and total liabilities of $25.1 million. Additionally, Markel reported that the fair value of the Company's investment in CROF was $12.0 million.

36.    On October 30, 2018, Markel filed a Form 10-Q for the period ended September 30, 2018, with the SEC which was signed by defendants Gayner, Whitt and Noble and contained the same accounting representations and Sarbanes Oxley certification detailed above in ¶¶29-30. Regarding MCIM, the Company reported revenue of $18.3 million. For the Markel Diversified Fund, Markel reported total assets of $96.1 million and total liabilities of $25.1 million. Additionally, Markel reported that the fair value of the Company's investment in CROF was $11.7 million.

37.    The statements referenced above in ¶¶28-31, 33-35 and 37-38 were materially false and misleading when made because they failed to disclose the following adverse facts which were known to defendants or recklessly disregarded by them as follows:

(a)    that Markel lacked effective reporting controls and was not reporting its financial results in compliance with GAAP;

(b)    that MCIM was not appropriately recording loss reserves;

(c)    that as a result, MCIM's loss reserves would need to be adjusted and/or restated;

(d)    that these accounting practices would lead to regulatory scrutiny and financial loss to investors;

(e)    that Markel was carrying the MCIM assets on its books at an inflated valuation; and

(f)    as a result of the foregoing, defendants' positive statements during the Class Period were false and misleading and/or lacked a reasonable basis.

38.     On December 6, 2018, after the close of trading, Markel issued a press release disclosing in pertinent part as follows:

> Markel Corporation (NYSE:MKL) said today that after having been contacted on November 30, 2018, it is fully cooperating with inquiries by US and Bermuda authorities into loss reserves recorded in late 2017 and early 2018 at Markel CATCo Investment Management Ltd and its subsidiaries.  These inquiries are limited to Markel CATCo Investment Management Ltd and its subsidiaries and do not involve other Markel Corporation companies.  Outside counsel has been retained to conduct an internal review.

39.     In response to this news, the price of Markel common stock declined by $99.70 per share to close at $1,048.23 per share on December 7, 2018, a decline of more than 8%, on unusually high volume of 148,800 shares trading, more than three times the average volume over the preceding ten trading days.

40.     Thereafter, on January 18, 2019, Markel filed a Current Report on Form 8-K with the SEC disclosing that "effective immediately," the employment of both "Anthony Belisle, Markel CATCo Chief Executive Officer and Alissa Fredricks, Markel CATCo Chief Executive Officer – Bermuda" had been terminated.  According to Markel, as a result of the internal review being conducted into Markel CATCo by outside counsel, "Markel discovered violations by Mr. Belisle and Ms. Fredricks of Markel policies relating to an undisclosed personal relationship," resulting in their termination.

41.     Then, on February 5, 2019, Markel issued a press release announcing its fiscal year 2018 financial results for the fiscal year ended December 31, 2018 in which it disclosed that those results had been negatively "impacted by a goodwill and intangible asset impairment in [its] Markel CATCo operations."  Specifically addressing the terminations announced in January 2019 and the impairment charge of 100% of the carrying value of Markel CATCo, the release stated, in pertinent part, as follows:

Markel CATCo

Effective January 18, 2019, as previously announced, two senior executives of Markel CATCo are no longer with the Company. We had accrued $64.3 million of incentive and retention compensation for the two individuals as of September 30, 2018, of which $34.9 million was accrued as of December 31, 2017. This accrual was reversed in the fourth quarter of 2018 and was reflected as a reduction to services and other expenses in our consolidated statement of loss and comprehensive loss.

***Also in the fourth quarter of 2018, we reduced the carrying value of the goodwill and intangible assets of the Markel CATCo reporting unit to zero, which resulted in an impairment charge of $179.0 million. In light of governmental inquiries into loss reserves recorded in late 2017 and early 2018 at an entity managed by Markel CATCo, and taking into consideration the departure of two senior executives and certain redemption rights that are now being offered to investors in ILS Funds managed by Markel CATCo, Markel CATCo's ability to maintain or raise capital has been adversely impacted. As a result, we performed an assessment of the recoverability of goodwill and intangible assets at the Markel CATCo reporting unit as of December 31, 2018 and determined this impairment charge was necessary.***

42.    As a result of defendants' wrongful acts and omissions, plaintiff and the Class purchased Markel securities at artificially inflated prices, suffered significant losses and were damaged thereby.

## LOSS CAUSATION AND ECONOMIC LOSS

43.    During the Class Period, as detailed herein, defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated the prices of Markel securities and operated as a fraud or deceit on purchasers of Markel securities. As detailed above, when the truth about Markel's misconduct was revealed, the value of the Company's securities declined precipitously as the prior artificial inflation no longer propped up the securities' prices. The decline in Markel's share price was the direct result of the nature and extent of defendants' fraud finally being revealed to investors and the market. The timing and magnitude of the share price decline negate any inference that the losses suffered by plaintiff and other members of the Class were caused by changed market conditions, macroeconomic or industry factors, or Company-specific facts

unrelated to defendants' fraudulent conduct.  The economic loss, *i.e.*, damages, suffered by plaintiff and other Class members was a direct result of defendants' fraudulent scheme to artificially inflate the prices of the Company's securities and the subsequent significant decline in the value of the Company's securities when defendants' prior misrepresentations and other fraudulent conduct were revealed.

44.    At all relevant times, defendants' materially false and misleading statements or omissions alleged herein directly or proximately caused the damages suffered by plaintiff and other Class members.  Those statements were materially false and misleading through their failure to disclose a true and accurate picture of Markel's business, operations and financial results as alleged herein.  Throughout the Class Period, defendants issued materially false and misleading statements and omitted material facts necessary to make defendants' statements not false or misleading, causing the prices of Markel's securities to be artificially inflated.  Plaintiff and other Class members purchased Markel securities at those artificially inflated prices, causing them to suffer damages as complained of herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE

45.    Plaintiff and the Class are entitled to a presumption of reliance under *Affiliated Ute Citizens v. United States*, 406 U.S. 128 (1972), because the claims asserted herein against defendants are predicated upon omissions of material fact for which there was a duty to disclose.

46.    Plaintiff and the Class are also entitled to a presumption of reliance pursuant to *Basic Inc. v. Levinson*, 485 U.S. 224 (1988), and the fraud-on-the-market doctrine because the market for Markel stock was an efficient market at all relevant times by virtue of the following factors, among others:

(a)    Markel stock met the requirements for listing, and was listed and actively traded on NYSE, a highly efficient market;

- 14 -

(b)     Markel regularly communicated with public investors via established market communication mechanisms, including the regular dissemination of press releases on the national circuits of major newswire services and other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(c)     Markel was followed by a number of securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms.  These reports were publicly available and entered the public marketplace.

47.    As a result of the foregoing, the market for Markel stock promptly incorporated current information regarding the Company from publicly available sources and reflected such information in the prices of the stock.  Under these circumstances, all those who transacted in Markel stock during the Class Period suffered similar injury through their transactions in Markel stock at artificially inflated prices and a presumption of reliance applies.

48.    Without knowledge of the misrepresented or omitted material facts, plaintiff and other Class members purchased or acquired Markel stock between the time defendants misrepresented and failed to disclose material facts and the time the true facts were disclosed. Accordingly, plaintiff and other Class members relied, and are entitled to have relied, upon the integrity of the market prices for Markel stock, and are entitled to a presumption of reliance on defendants' materially false and misleading statements and omissions during the Class Period.

## CLASS ACTION ALLEGATIONS

49.    Plaintiff brings this action on behalf of all purchasers of Markel securities during the Class Period who were damaged thereby (the "Class").  Excluded from the Class are defendants and their immediate families, the officers and directors of the Company and their immediate families,

their legal representatives, heirs, successors or assigns, and any entity in which any of the defendants have or had a controlling interest.

50.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Markel securities were actively traded on the NYSE. While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Markel or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions. Upon information and belief, these shares are held by hundreds or thousands of individuals located geographically throughout the country.  Joinder would be highly impracticable.

51.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of the federal laws complained of herein.

52.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

53.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by defendants' acts as alleged herein;

(b)    whether defendants acted knowingly or with deliberate recklessness in issuing false and misleading statements;

(c)    whether the prices of Markel securities during the Class Period were artificially inflated because of defendants' conduct complained of herein; and

(d)    whether the members of the Class have sustained damages and, if so, the proper measure of damages.

54.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

### COUNT I

**For Violation of §10(b) of the 1934 Act and Rule 10b-5**
**Against All Defendants**

55.    Plaintiff incorporates ¶¶1-54 by reference.

56.    During the Class Period, defendants disseminated or approved the false or misleading statements specified above, which they knew or recklessly disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

57.    Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

(a)    employed devices, schemes, and artifices to defraud;

(b)    made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

- 17 -

(c)      engaged in acts, practices, and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Markel securities during the Class Period.

58.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Markel securities.  Plaintiff and the Class would not have purchased Markel securities at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by defendants' misleading statements.

59.     As a direct and proximate result of defendants' wrongful conduct, plaintiff and the other members of the Class suffered damages in connection with their purchases of Markel securities during the Class Period.

## COUNT II

### For Violation of §20(a) of the 1934 Act
### Against All Defendants

60.     Plaintiff incorporates ¶¶1-59 by reference.

61.     During the Class Period, defendants acted as controlling persons of Markel within the meaning of §20(a) of the 1934 Act.  By virtue of their positions and their power to control public statements about Markel, the Individual Defendants had the power and ability to control the actions of Markel and its employees.  Markel controlled the Individual Defendants and its other officers and employees.  By reason of such conduct, defendants are liable pursuant to §20(a) of the 1934 Act.

### PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for judgment as follows:

A.      Determining that this action is a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as Class representative under Rule 23 of the Federal Rules of Civil Procedure and plaintiff's counsel as Lead Counsel;

B. Awarding plaintiff and the members of the Class damages and interest;

C. Awarding plaintiff's reasonable costs, including attorneys' fees; and

D. Awarding such equitable/injunctive or other relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED:  March 7, 2019

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
MARY K. BLASY


*/s/ Samuel H. Rudman*
SAMUEL H. RUDMAN

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
mblasy@rgrdlaw.com

JOHNSON FISTEL, LLP.
W. SCOTT HOLLEMAN
Murray House
99 Madison Avenue, 5th Floor
New York, NY  10016
Telephone: 212/802-1486
212/602-1592 (fax)
scotth@johnsonfistel.com

*Attorneys for Plaintiff*

## CERTIFICATION OF PLAINTIFF PURSUANT
## TO THE FEDERAL SECURITIES LAWS

I, Glen Cohendeclare the following as to the claims asserted, or to be asserted, under the federal securities laws:

1.      I have reviewed the complaint with my counsel and authorize its filing.

2.      I did not acquire the securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action or any other litigation under the federal securities laws.

3.      I am willing to serve as a representative party on behalf of the class, including testifying at deposition or trial, if necessary.

4.      I made the following transactions during the Class Period in the securities that are the subject of this action.

**Acquisitions:**

| Date Acquired | Number of Shares Acquired | Acquisition Price Per Share |
|---|---|---|
| 5/11/2018 | 20 | 1154.29 |
| 10/1/18 | 5 | 1181.81 |
| 10/25/18 | 15 | 1086.92 |

**Sales:**

| Date Sold | Number of Shares Sold | Selling Price Per Share |
|---|---|---|
| 2/6/19 | 40 | 1022.46 |

5.      I will not accept any payment for serving as a representative party beyond my pro-rata share of any recovery, except reasonable costs and expenses – such as lost wages and

travel expenses – directly related to the class representation, as ordered or approved by the Court pursuant to law.

6.      I have not sought to serve or served as a representative party for a class in an action under the federal securities laws within the past three years, except if detailed below:

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 5th day of March 2019.

DocuSigned by:

*Glen Cohen*

04FC14E984D949D...

Glen Cohen